LUKE A. BUSBY, ESQ
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for the Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

JOHN AND MELISSA FRITZ,

                Plaintiffs,

vs.

WASHOE COUNTY, a political subdivision of
the State of Nevada; and DOES 1 through 10
inclusive;

                Defendants.

_____/

Case No.: 3:20-CV-00681-RJC-WGC

**SECOND AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**JURY TRIAL DEMANDED**

COME NOW, JOHN AND MELISSA FRITZ, a married couple ("the Fritzes" or "Plaintiffs"), by and through the undersigned counsel, and file the following Second Amended Complaint seeking redress for the violation of the Fritzes' right to just compensation for the taking of private property for public use in violation of the Fifth Amendment of the United States Constitution by WASHOE COUNTY, a political subdivision of the State of Nevada; and DOES I through X, inclusive.

## JURISDICTION

1.    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 2201(a). There is federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs allege violations of the federal Constitution.  Plaintiffs seek a declaration of their rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2.    This Court has personal jurisdiction over Defendants because (a) they are located in the District in which this action was filed; and (b) the actions giving rise to these claims occurred in and/or were directed from this District.

3.     Washoe County may be directly sued in Federal Court under the provisions of 42 U.S.C. § 1983 for violating the Plaintiffs' rights under the 5th Amendment. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2164 (2019).

**VENUE**

4.     Venue is proper pursuant to 28 U.S.C. Section 1391 in the District of Nevada because the acts giving rise to the Plaintiffs' claims occurred in this District.

**PARTIES**

5.     The Fritzes own the property located at 14400 Bihler Road in Washoe County, Nevada (hereinafter, "Property").

6.     Washoe County is a local government and is a political subdivision of the State of Nevada.  At all times relevant hereto Washoe County was acting under color of Nevada law.

**ALLEGATIONS OF FACT**

7.     Whites Creek No. 4 is an ephemeral stream that flows in response to local precipitation and runoff and that drains through the Fritz property at 14400 Bihler Road in unincorporated Washoe County, Nevada.

8.     Before development of nearby subdivisions, surface and storm water from Mt. Rose Highway and these nearby upslope parcels flowed into Whites Creek No. 4 downstream from the Fritz property.

9.     Lancer Estates and Monte Rosa are two subdivisions upstream from the Fritz property and consist of 231 homes in Lancer Estates and 64 homes in Monte Rosa.

10.     The Estates at Mount Rose Unit 3b is another subdivision upstream of the Fritz property and consists of approximately 23 homes.

11.     While Lancer Estates was being constructed in the mid-1990s, Washoe County directed the developers of to divert all water above 10 Cubic Feet per Second ("CFS") flowing from Mt. Rose Highway, which runs along the southerly edge of Lancer Estates and Monte Rosa, through Lancer Estates and into Whites Creek upstream of the Fritz property.

12.     The development of Lancer Estates and Monte Rosa, and other developments in the area around Whites Creek No. 4, including the Estates at Mount Rose, creates and is creating

2

a large area of impervious surfaces that increased stormwater runoff into Whites Creek by virtue of the construction of rooftops, streets, and driveways, resulting in increased runoff as compared to pre-development conditions.

13.     The water from Mt. Rose Highway and the stormwater runoff from Lancer Estates and Monte Rosa are diverted into Whites Creek No. 4 upstream from the Fritz property, where in a pre-development condition, the same water from storms drained into Whites Creek No.4 downstream from the Fritzes Property.

14.     The Fritzes purchased the property in 2001 and then built their home, and a garage, and shop.

15.     After a severe flood in Late December of 2005 during which Whites Creek No. 4 overflowed onto and flooded the property, the Fritzes became concerned and began to take measures to try and prevent flooding of the buildings and on the property, such as building a boulder berm and grading the Property to direct water away from the structures on the Property.

16.     Although construction of Lancer Estates began in the 1980s, development of Monte Rosa was not completed until 2007.

17.     John Fritz did not know that the diversion and superinduction of water was causing the flooding on the property until he discovered the "NDOT letter" in 2010.

18.     The NDOT letter, authored by a District Engineer at the Nevada Department of Transportation on June 13, 1996 shows that the County agreed to direct the developers of Lancer Estates to transfer all water in excess of 10 CFS from Mt. Rose Highway into Whites Creek No. 4.

19.     A 1990 letter from CFA, the engineering firm that designed Lancer Estates, showed that Washoe County and the developers of Lancer Estates knew and agreed that development of the site would increase runoff into Whites Creek No. 4 through the Fritz property.

20.     The CFA letter acknowledges increased runoff caused by the Lancer Estates development would not be retained on site but would be directly discharged, unmitigated, into Whites Creek No. 4.

21.     In 1994, the County commissioned a study of the hydrology of the Whites Creek area that identified the Fritz property to be in a "problem area" for flooding.

22.     The Lancer Estates storm drainage system was designed to carry out the directive from the County to divert water from Mt. Rose Highway that exceeded 10 cubic feet per second (cfs) through Lancer Estates, and into Whites Creek #4.

23.     The diversion and superinduction of water into Whites Creek from Mt. Rose Highway, Lancer Estates, Monte Rosa, and the Estates at Mount Rose and across the Fritzes Property has caused damage to the Fritzes Property.

24.     On August 9, 2014 the Fritzes experienced flooding on their Property, where Whites Creek No. 4 overflowed onto and flooded the Property.

25.     In January and February of 2017, the Fritzes again experienced severe flooding on their Property, where Whites Creek No. 4 overflowed onto and flooded the Property.

26.     Since the flood on the Fritzes Property in 2017, Washoe County has continued to permit and substantially patriciate in the development of stormwater infrastructure in the Whites Creek watershed that diverts and adds additional stormwater runoff via the creation of impervious surfaces, which exacerbates the flooding risk to the Fritzes parcel.

27.     From 2006 to the date of filing of this complaint, another development was and is being planned and constructed in the Whites Creek watershed entitled the Estates at Mt. Rose. The hydrology plans for the Estates at Mt. Rose included retention and/or detention ponds for the mitigation of the increased risks of flooding created by the development.

28.     The purpose of a detention pond in a development is to detain and slowly release in controlled fashion storm water flow increases caused by the creation of impervious surfaces to prevent damage to downstream properties.

29.     However, the Plaintiffs have very recently discovered, in late 2020, that the plans for the Estates at Mt. Rose for detention and/or retention ponds were not followed.

30.     In at least one instance the planned retention and/or detention pond was not constructed because Truckee Meadows Water Authority ("TMWA") is or has constructed a Water

Treatment Facility on the site where the detention and/or retention ponds were to be built for the Estates at Mt. Rose according to the plans submitted to Washoe County for approval.

31.     Washoe County approved special use permit No. 15-102 for TMWA in February of 2016.  The practical effect of the approval of this special use permit was that the detention pond No. 1 listed in the hydrology report for Estates at Mount Rose 3b was deleted from the plans, and the runoff from the development was permitted to be discharged into Whites Creek without any mitigation of the effect of the displacement of water from the paving over of the land for the development.

32.     During the course of the Fritzes claim in state Court, Washoe County never disclosed to the Fritzes that the detention pond that was to be built for the Estates at Mount Rose was to be deleted.

33.     The construction of the TMWA plant on the site where the detention pond was to be build did no commence until approximately late 2019.

34.     On September 25, 2018, Washoe County accepted dedication of the streets in the Estates at Mount Rose but did not record the resolution accepting the streets with the Washoe County Recorder until February 10, 2020.  *See* Exhibit 2.

35.     The Fritzes became aware of the fact that the detention pond that was to be built for the Estates at Mount Rose was to be deleted due to the recent construction of TMWA's facility in the area.

36.     The deletion of the detention and/or retention pond for the Estates at Mt. Rose and the construction of the houses and associated improvements without the detention and/or retention pond will cause further stormwater flooding impacts to downstream properties, including, but not limited to the Fritzes Property.

37.     The diversion and superinduction of water into Whites Creek from Mt. Rose Highway and the upstream developments and through the Fritzes Property are for public use, i.e. to protect upstream property from flooding risks, at the expense of downstream properties.

38.     The diversion and superinduction of water into Whites Creek from Mt. Rose Highway and the upstream developments and through the Fritzes Property are conveyed through public facilities owned or controlled by Washoe County.

39.     Washoe County has taken and continues to take an unlimited flowage easement on the Fritzes Property to protect upstream properties from flooding, including Lancer Estates, Monte Rosa, Mount Rose Highway, and the Estates at Mt. Rose without paying just compensation for the flowage easement.

40.     The Fritzes have been forced to bear the burden of the increase of and the diversion of stormwater through their property caused by the development of upstream land and stormwater infrastructure upstream from their property that should fairly be borne by the public at large. *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

41.     The Fritzes filed suit in the Second Judicial District Court of the State of Nevada on April 4, 2013 in accordance with the then existing state remedy exhaustion requirement in the Supreme Court's decision in *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108 (1985), claiming that their property had been taken by Washoe County for public use without just compensation having been paid.

42.     In June of 2019, in *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2164 (2019), the Court overruled the exhaustion requirement in Williamson County and expressly provided that taking claims against local governments may be brought under 42 U.S.C. 1983 at the time that a taking occurs.

43.     The Fritzes' claim was initially dismissed on summary judgment by the District Court, which was reversed by the Nevada Supreme Court in *Fritz v. Washoe County*, 132 Nev. Adv. Op. 57, 376 P.3d 794, 2016 WL 4140940 (2016).

44.     In the *Fritz v. Washoe County* decision, the Nevada Supreme Court established a six-part test to determine whether an inverse condemnation claim under State Law would succeed: 1) a taking (2) of real or personal interest in private property (3) for public use (4) without just compensation being paid (5) that is proximately caused by a governmental entity (6) that has not instituted formal proceedings. *Id.*

45.     On remand, the Nevada District Court bifurcated the liability and damages components of the case and then held bench trial on the lability issues on April 9, 2018, to April 11, 2018, after which the Court issued its April 24, 2018 Findings of Fact and Conclusions of Law and Judgment After Bench Trial ("District Court's Order")   in favor of Washoe County.

46.     The District Court's Order made the followings findings of fact: Whites Creek No. 4 crosses the Fritzes property; Washoe County directed the developers of Lancer Estates to divert water from Mt. Rose Highway that exceeded 10 cfs through Lancer Estates and into Whites Creek No. 4; that the construction of Lancer Estates and Monte Rosa increased runoff into Whites Creek No. 4; the Lancer Estates storm drainage system is designed to accommodate a 10-year event but not a 100-year event; Prior to the construction of Lancer Estates, a large percentage of water that flowed through Lancer Estates and drained into Whites Creek No. 4 below the Fritzes Property whereas after development that water enters Whites Creek No. 4 upstream from the Fritzes property;  that because Washoe County took numerous actions that modified the natural drainage of Lancer Estates, Monte Rosa, and Mt. Rose Highway, that Washoe County's actions constitute substantial involvement in the development of private lands.

47.     Despite these facts, the District Court concluded that because the Fritzes property has been used for practical purposes other than a flood channel, that there was no substantial injury to the economic value of the property and that no taking had occurred.

48.     Plaintiffs then appealed the Nevada District Court's ruling to the Nevada Supreme Court, which issued an Order of Affirmance of the District Court's Order on May 31, 2019.  See *Fritz v. Washoe Cty.*, 441 P.3d 1089 (Unpub. Nev. 2019).

49.     The Nevada Supreme Court's Order of Affirmance does not cite to Federal Law and relied on a requirement in Nevada law, that the Fritzes show "substantial injury" in addition to physical invasion in order to prove a taking occurred.  *Id.*

50.     The Fritzes then filed Petition for Writ of Certiorari to the United States Supreme Court.  The basis for the Fritzes Petition to the United States Supreme Court was that the Nevada Supreme Court's decision that to show a taking a party must demonstrate "substantial injury" to the economic usefulness of the property was inconsistent with Federal takings decisions in *Loretto*

*v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) and *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 38 (2012).

51.     The Fritzes Petition was supported by the filing of an Amici Brief by the Pacific Legal Foundation, which argued that the Nevada Supreme Court's decision permitted Washoe County to take a flowage easement, destroying the Fritzes right to exclude the County from their Property, without paying just compensation.

52.     The Supreme Court denied the Fritzes' Petition without comment on May 4, 2020 in Docket No. 75636.  An order denying a petition for a writ of certiorari is not a reflection of the Supreme Court's views on the merits of a case or jurisdiction.  *Supreme Court Practice*, Eleventh Edition, Bloomberg Law (2020).

53.     Since the decision of the US Supreme Court, the Fritzes subsequently discovered in late 2020 that Washoe County approved special use permit No. 15-102 for TMWA in February of 2016.  The circumstances surrounding the Fritzes discovery of the Estates at Mount Rose 3(b) are described in the Declaration of Clark Stoner, P.E., attached hereto as Exhibit 1.

54.     The practical effect of the approval by Washoe County of special use permit No. 15-102 for TMWA was that the detention pond No. 1 listed in the hydrology report for Estates at Mount Rose 3b was deleted from the plans, and the runoff from the development was permitted to be discharged into Whites Creek without any mitigation of the effect of the displacement of water from the paving over of the land for the development.

55.     The fact that the proposed detention pond for the Estates at Mount Rose 3(b) was to be deleted was never disclosed to the Fritzes by Washoe County during the course of proceedings in the underlying state case, or otherwise.  *See* Exhibit 1.

56.     Washoe County has taken a perpetual flowage easement—allowing use of the Fritz property to prevent flooding on Mount Rose Highway, Lancer Estates, the Estates an Mount Rose, and Monte Rosa—for free.  Federal Law has treated physical invasions as a distinct species of public use of private property and has long recognized that even temporary occupations are governed by a categorical rule. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002) ("When the government physically takes possession of an interest in

property for some public purpose, it has a categorical duty to compensate the former owner.") (citing *United States v. Pewee Coal Co.*, 341 U.S. 114, 115 (1951)), with *Arkansas Game and Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012) ("In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules.").

57.     Nevada's takings jurisprudence as cited and applied in the Fritzes case by Nevada state courts is not coextensive with Federal takings law because it required the Fritzes to show "substantial injury" in addition to physical occupation of their property to show a taking.  As such, the Fritzes state case should not preclude their bringing this claim. *San Remo Hotel, L.P. v. City & Cty. of S.F.,* 545 U.S. 323, 335, 125 S. Ct. 2491, 2500 (2005).

58.     Further, Washoe County has engaged in additional acts subsequent to the decision in the state court case described above in the Whites Creek watershed that will increase the amount of water flowing across the Fritzes Property during storm events.  Namely, Washoe County has permitted continued development in the Whites Creek watershed to occur while allowing development without mitigation measures to prevent downstream flooding on the Fritzes Property.

59.     Thus, Washoe County's own actions have resulted in a further taking of the Fritzes property for public use without just compensation and resulted in a situation where the issue to be decided in this case is distinct from the issue that was decided in the Fritzes previous case that was litigated in State Court.

## CLAIMS FOR RELIEF

### 42 U.S.C. § 1983 - VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

60.     Plaintiffs repeat and reallege the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

61.     The Fifth Amendment to the United States Constitution provides in relevant part: "[N]or shall private property be taken for public use, without just compensation."

62.     Defendant took the Plaintiffs' private Property for public use.

63.     Defendant has not instituted formal proceedings to take the Plaintiffs' real or personal property.

64.     Defendant has not paid just compensation to the Plaintiffs for the taking of Plaintiffs' real or personal property.

65.     By its conduct, as described herein, Defendant is liable to the Plaintiff under 42 U.S.C. § 1983 for taking the Plaintiffs' property for public use without first paying just compensation by physical invasion of water resulting from failure to design, engineer, construct or maintain storm water and wastewater conveyances in a manner as not to foreseeably flood private property; and through approval of, acceptance of dedications, and annexation of infrastructure to transport storm water and wastewater from one private property to another.

66.     The actions of Washoe County described herein executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by Washoe County's officers.

67.     Defendant Washoe County has directly acted to and developed, implemented, enforced, encouraged and sanctioned express and implied de facto policies, practices, and/or customs of unlawfully using the Property of others as a floodway without having first paid just compensation.

68.     The Constitutional abuses and violations by Defendant Washoe County were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Washoe County, including its practice and policy of unlawfully and surreptitiously using the Plaintiffs' Property as a floodway without paying for the right to do so.

69.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to money damages for the unconstitutional taking of their property as well as declaratory relief.

70.     Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

71.     In addition to the relief requested above, the Plaintiffs requests relief as described in the prayer for relief below.

## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201

72.     Plaintiffs repeat and reallege the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

73.     The Fifth Amendment to the United States Constitution provides in relevant part: "[N]or shall private property be taken for public use, without just compensation."

74.     Defendant took the Plaintiffs' private Property for public use.

75.     Defendant has not instituted formal proceedings to take the Plaintiffs' real or personal property.

76.     Defendant has not paid just compensation to the Plaintiffs for the taking of Plaintiffs' real or personal property.

77.     There is a genuine and bona fide dispute and an actual controversy and disagreement between Washoe County and the Fritzes regarding whether Washoe County has a taken the Fritzes property for public use without paying just compensation.

78.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, the Fritzes in good faith request that the Court declare the following:

1.  That Washoe County's actions in the Whites Creek watershed constitute a taking of the Fritzes property for public use;

2.  That the Fritzes have a right to just compensation for the taking of their property for public use;

3.  That the Fritzes right to exclude the public, including Washoe County, from the use of their property unless just compensation is paid;

4.  That Washoe County has violated the rights of the Fritzes under the 5th Amendment by taking a flowage easement on their property without having paid just compensation; and

5.  That Washoe County's continued approval of development that increases flooding risks in the Whites Creek area without adequate stormwater mitigation measures constitutes the taking of downstream properties for public use without just compensation in violation of the 5th Amendment.

11

WHEREFORE, the Plaintiffs request that this Court:

A.    Enter a declaratory judgment that the actions of Washoe County complained of herein are unlawful and violate the United States Constitution;

B.    Order Defendant to pay just compensation to Plaintiffs for the taking of their property for public use in amounts to be proven at trial;

C.    Order Defendant to pay compensatory and consequential damages in an amount to be proven at trial;

D.    Order Defendant to pay attorneys' fees and costs of the action pursuant to 42 U.S.C. § 1988;

E.    Order the Defendant to pay the fees and costs associated with any exhaustion of state court remedies as then required by *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108 (1985).

F.    Order Defendant to pay pre- and post- judgment interest at the legal rate as appropriate; and

G.    Grant any further relief that the Court deems just and proper.


**DATED** this ___3/11/2021_____


By:   _____
LUKE A. BUSBY, ESQ.
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiffs*

1

2
**Exhibit List**

3
1.  Declaration of Clark Stoner P.E.

4
2.  Resolution Accepting Real Property for Use as a Public Street, Recorded February 10, 2020.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                **CERTIFICATE OF SERVICE**

3          Pursuant to FRCP 5(b), I certify that on the date shown below, I caused service to be

4    completed of a true and correct copy of the foregoing Document by:

5    _____          personally delivering;

6    _____          delivery via Reno/Carson Messenger Service;

7    _____          sending via Federal Express (or other overnight delivery service);

8    _____          depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

9    ___X___          delivery via electronic means (fax, eflex, NEF, etc.) to:

10                          MICHAEL W. LARGE
                            Deputy District Attorney
11                          One South Sierra Street
                            Reno, NV 89501
12                          mlarge@da.washoecounty.us
                            (775) 337-5700
13                          ATTORNEY FOR WASHOE COUNTY

14                     **DATED** this March 11, 2021

15

16                                          By: ____/s/ Luke Busby___.

17

18

19

20

21

22

23

24

25

26

27

28

                                               14