MICHAEL W. LARGE
Deputy District Attorney
Nevada State Bar Number 10119
One South Sierra Street
Reno, NV 89501
mlarge@da.washoecounty.us
(775) 337-5700

ATTORNEYS FOR WASHOE COUNTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JOHN AND MELISSA FRITZ,

    Plaintiff,

vs.

WASHOE COUNTY, a political subdivision of the State of Nevada; and DOES 1 through 10 inclusive,

    Defendants.

Case No. 3:20-cv-00681-RCJ-WGC

**NON-OPPOSITION TO PLAINTIFFS' MOTION TO FILE SECOND SUPPLEMENT TO OPPOSITION TO MOTION TO DISMISS**

Defendant by and through counsel Michael W. Large, Washoe County Deputy District hereby files this non-opposition to Plaintiffs' Motion to file a Second Supplement to Opposition to Motion to Dismiss (ECF No. 27). This non-opposition is supported by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Washoe County does not oppose Plaintiffs' Motion to File a Second Supplement to the Opposition to the Motion to Dismiss. In that Motion, Plaintiffs request that this Court consider the Supreme Court's decision in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2078–79 (2021). Despite its non-opposition, Washoe County respectfully submits that the application of *Cedar Point* to the present case is nebulous. Plaintiffs misanalyse the *Cedar Point* decision in claiming that it evidences that Nevada's takings jurisprudence is not coextensive with Federal takings law under the *San Remo L.P. v. City & Cty. of S.F.*, 545 U.S. 323, 335, 125 S.Ct. 2491, 2500 (2005).

-1-

In *Cedar Point*, the Supreme Court addressed a California regulation which granted labor organizations a "right to take access" to an agricultural employer's property in order to solicit support for unionization. 141 S. Ct. at 2066. The question presented whether a regulation that results in a physical appropriation of property constitutes a per se taking or whether it should be analyzed under the *Penn Central* factors. *Id.* at 2075. The Supreme Court held that because the access regulation grants labor organizations a right to invade the growers' property that it constitutes a *per se* physical taking and that *Penn Central* is inapplicable. *Id.* at 2080.

In the present case, Plaintiffs allege that Washoe County committed a Fifth Amendment taking of property by approving uphill subdivision which caused flooding on the Plaintiffs' property. As argued in the Motion to Dismiss, Plaintiffs brought this exact same claim in their state court action and are not now seeking a second chance to litigate the same claim and issues that were rejected by the state court, the Nevada Supreme Court and the United States Supreme Court.

Unlike *Cedar Point*, this case involves an alleged physical taking through temporary government induced flooding not a regulatory taking. However, in reaching its decision in *Cedar Point*, the Supreme Court addressed many of the same issues that Judge Drakulich analyzed in the Findings of Fact and Conclusions of Law after the bench trial in state court. *See* ECF No. 5 at Ex. 3. Notably, both the Supreme Court's decision in *Cedar Point* and Judge Drakulich's decision in the state court action analyzed the distinction between trespass and takings in regard to temporary government induced flooding.[1]

In reaching its decision in *Cedar Point*, the Supreme Court found:

> First, our holding does nothing to efface the distinction between trespass and takings. Isolated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts rather than appropriations of a property right. This basic distinction is firmly grounded in our precedent. *See Portsmouth*, 260 U.S. at 329–330, 43 S.Ct. 135 ("[W]hile a single act may not be

---

[1] Judge Drakulich ultimately decided that the flooding was not "government-induced" and therefore "proximate cause of the flooding on the [Fritzes] property" and thus did not "constitute a public use." ECF No. 5 at Ex. 3 p. 17.

> enough, a continuance of them in sufficient number and for a sufficient time may prove [the intent to take property]. Every successive trespass adds to the force of the evidence."); 1 P. Nichols, The Law of Eminent Domain § 112, p. 311 (1917) ("[A] mere occasional trespass would not constitute a taking."). And lower courts have had little trouble applying it. *See, e.g., Hendler v. United States*, 952 F.2d 1364, 1377 (CA Fed. 1991) (identifying a "truckdriver parking on someone's vacant land to eat lunch" as an example of a mere trespass).
>
> The distinction between trespass and takings accounts for our treatment of temporary government-induced flooding in *Arkansas Game and Fish Commission v. United States*, 568 U.S. 23, 133 S.Ct. 511, 184 L.Ed.2d 417 (2012). There we held, "simply and only," that such flooding "gains no automatic exemption from Takings Clause inspection." *Id.*, at 38, 133 S.Ct. 511. Because this type of flooding can present complex questions of causation, we instructed lower courts evaluating takings claims based on temporary flooding to consider a range of factors including the duration of the invasion, the degree to which it was intended or foreseeable, and the character of the land at issue. Id., at 38–39, 133 S.Ct. 511.

141 S. Ct. 2063, 2078–79.

Applying similar logic to the facts presented during the bench trial in the state court action, Judge Drakulich held:

> The foregoing evidence shows that the Plaintiffs' property was flooded in 2005 and 2017, and suffered from pooling of water in 2014. The inevitability of flooding on the Property is almost exclusively related to extreme weather conditions that occurred twice in twelve years, and there was no evidence presented that proved or disproved the likelihood of reoccurring flooding on the Property. Flooding not shown to be inevitably recurring occupies the category of mere consequential injury or tort. *Pinkham v. Lewiston Orchards Irr. Dist.*, 862 F.2d 184, 189 (9th Cir. 1988). "To constitute a compensable taking by inverse condemnation where no permanent flooding of land is involved, proof of *frequent and inevitability recurring* inundation due to government action is required. *Id.* (*citing United States v. Cress*, 243 U.S. 316, 328 37 S. Ct. 380, 385 (1917).

ECF No. 10 at Ex. 3 p. 19 (emphasis in original).

As instructed by the *Arkansas Game and Fish* decision and as noted in *Cedar Point*, Judge Drakulich analyzed the "complex questions of causation" involved in flooding cases, 568 U.S. 23,

and held that based on the evidence at trial that "Washoe County was not the proximate cause of the flooding on the Property and did not constitute a public use..." ECF No. 10 at Ex. 3 p. 17. Further, Judge Drakulich addressed the duration of the invasion and held that flooding on the property only occurred twice in 12 years, and was related only to extreme weather conditions. *Id.* In the decision, Judge Drakulich also analyzed the character of the land at issue and held that the flooding on Plaintiffs' property consisted only of erosion and channeling on the south side of the parcel..." *Id.*

Judge Drakulich, in making the determination that no taking had occurred and that Washoe County was not the proximate cause of the flooding, addressed the Fifth Amendment concerns articulated in the Cedar Point decision. Understandably, Plaintiffs do not like the result because they lost. But disagreement does not give them another chance to relitigate the exact same claim and issues.

Ultimately, *Cedar Point* is inapplicable to the Motion to Dismiss. Plaintiffs brought and litigated their Fifth Amendment claim in the state court action and accordingly, claim preclusion bars their action. The state court decision held that "no taking" and "no public use" under the Fifth Amendment was proven in the state court action, and accordingly, issue preclusion prevents retrying these issues. Plaintiffs' claim is also barred by the two-year statute of limitations and the *Rooker-Feldman* doctrine.

//
//
//
//
//
//
//
//

Washoe County does not object to Plaintiffs' Motion to file a Second Supplement to the Motion to Dismiss, however, nothing in the *Cedar Point* case gives Plaintiffs a do-over in a case that has been fully litigated, ruled upon, and affirmed by the Supreme Court of Nevada and the United States Supreme Court.

Dated this 21st day of July, 2021.

        CHRISTOPHER J. HICKS
        District Attorney

By    /s/ Michael W. Large
        MICHAEL W. LARGE
        Deputy District Attorney
        One South Sierra Street
        Reno, NV 89501
        mlarge@da.washoecounty.us
        (775) 337-5700

        ATTORNEYS FOR WASHOE COUNTY

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

LUKE BUSBY, ESQUIRE

Dated this 21st day of July, 2021.

/s/ C. Theumer
C. Theumer