UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN AND MELISSA FRITZ, | Case No. 3:20-cv-0681-RCJ-WGC |
| Plaintiff, | **ORDER** |
| v. | |
| WASHOE COUNTY, *et al.*, | |
| Defendants. | |

Plaintiffs John and Melissa Fritz assert, in their Second Amended Complaint, that Defendant Washoe County has taken a flowage easement on their property without just compensation in violation of the Fifth Amendment of the United States Constitution. (ECF No. 8.) As conceded by the Fritzes, this is the second litigation they have initiated against Washoe County "claiming that their property had been taken by Washoe County for public use without just compensation having been paid." *Id.* ¶ 41. Washoe County moves to dismiss (ECF No. 10), arguing, *inter alia*, that the Fritzes' claims are barred by Nevada's claim and issue preclusion rules pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, and barred by the *Rooker-Feldman* doctrine as a de-facto appeal of the state court's decision denying their claim. The Fritzes oppose (ECF No. 15), arguing that this suit is not precluded by the prior state litigation because it is brought pursuant to a different federal standard and different facts. Having considered the complaint, documents from the prior litigation that the Court will judicially recognize, and the arguments of the parties, the Court will grant Washoe County's motion.

## I. Background

The following is a brief summary of facts that are both alleged in the Fritzes' Second Amended Complaint in this matter and found by the state district court in its decision denying relief to the Fritzes in their state law inverse condemnation action.

The Fritzes purchased their property (the property) in 2001. The Fritzes built a home, a garage, and a shop on the property. Whites Creek No. 4, an ephemeral stream that only flows in response to local precipitation and runoff, drains through the property.

Beginning in the 1980s and continuing through the 1990s, Lancer Estates, a housing development consisting of 231 homes, was constructed at a location upstream and uphill from the property. Prior to the construction of the Lancer Estates storm drainage system, water that flowed through the Lancer Estates property would drain into Whites Creek #4 at a location downstream from the Fritzes' property.

In a 1990 letter from CFA (the engineering firm that designed Lancer Estates) to Washoe County, CFA noted their agreement that storm flows would not be retained on site but would be directly discharged into Whites Creek #4. The discharge locations from Lancer Estates into Whites Creek #4 is upstream from the property.

In 1994, Washoe County commissioned a study of the hydrology of the Whites Creek area. The study noted existing problem areas that had the potential for flooding. One of the noted problem areas for flooding included the property.

In 1996, the Nevada Department of Transportation wrote a letter to Washoe County noting an agreement that water flows in excess of 10 cubic feet per second (cfs) would be diverted from Mt. Rose Highway through Lancer Estates into Whites Creek #4. The Lancer Estates storm drainage system was designed to carry out the directive from Washoe County to accomplish this diversion of water.

In December 2005, Whites Creek #4 overflowed onto and flooded the Fritzes' property.

From 2005 through 2007, Monte Rosa, consisting of 64 homes, was constructed upstream of Lancer Estates.

In April 2013, the Fritzes filed an inverse condemnation action in state court claiming that their property had been taken by Washoe County for public use without just compensation. The state court initially granted summary judgment in favor of Washoe County.

In August 2014, Whites Creek #4 overflowed onto and flooded the Fritzes' property.

In 2016, the Nevada Supreme Court reversed the grant of summary judgment and remanded for further proceedings.

In January and February 2017, Whites Creek #4 overflowed onto and flooded the Fritzes' property.

In April 2018, following a three-day bench trial, the Nevada district court entered its Findings of Fact, Conclusions of Law and Judgment after Bench Trial, entering a judgment in favor of Washoe County.

The Fritzes appealed the district court's decision. The Nevada Supreme Court denied that appeal in 2019. The Fritzes petitioned the United States Supreme Court for a writ of certiorari, which was denied in May 2020.

The Fritzes also allege the following facts in their Second Amended Complaint, which facts were not adjudicated in the Nevada district court's decision. The Estates at Mt. Rose Unit 3b, a housing development of 23 homes, has been planned and is being constructed in the Whites Creek watershed. The hydrology plans for the Estates at Mt. Rose included retention or detention ponds to mitigate the increased risks of flooding created by the development. The Fritzes discovered, in late 2020, that the plans for the retention or detention ponds were not followed. Instead of at least one of the proposed detention ponds, the Truckee Meadows Water Authority is or has constructed a

Water Treatment Facility. Washoe County approved a special permit for this facility in February 2016. Construction of this facility began in late 2019.

## II.     Analysis

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). A defendant may raise the affirmative defense of claim or issue preclusion by motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir. 1984).

Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (internal citations omitted). This statute has long been understood to encompass the doctrines of res judicata, or "claim preclusion," and collateral estoppel, or "issue preclusion." *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 336 (2005). When determining the preclusive effect of a state court opinion, federal courts apply that state's rules of preclusion. *See In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) (citing 28 U.S.C. § 1738).

The Nevada Supreme Court has expressly "adopt[ed] the terms of claim preclusion and issue preclusion as the proper terminology in referring to these doctrines. *Five Star Cap. Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).

Under Nevada law, issue preclusion applies if the following factors are satisfied: "'(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom

the judgment is asserted must have been a party or in privity with a party to the prior litigation'; and (4) the issue was actually and necessarily litigated." *Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 916 (Nev. 2014) (alteration in original) (quoting *Ruby*, 194 P.3d at 710).

Nevada applies the following three-factor test to determine if claim preclusion applies: (1) the final judgment is valid, (2) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case, and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a "good reason" for not having done so. *See Weddell v. Sharp*, 350 P.3d 80, 85 (Nev. 2015).

The Fritzes do not dispute that they and Washoe County are the parties in the prior litigation. They also do not dispute that the state court found that a taking had not occurred and entered final judgment in favor of Washoe County.

The Fritzes raise, essentially, the same two theories in arguing that neither issue nor claim preclusion bars their complaint: first, they argue that the state courts applied a Nevada takings jurisprudence to their takings claim that is not co-extensive with federal takings jurisprudence; and, second, they argue that their present complaint alleges a takings claim that was not litigated in their state action.

The first argument fails both as to issue and claim preclusion because it is contrary to the record and the Fritzes' representations to the state district court, the Nevada Supreme Court and to the United States Supreme Court in their petition for a writ of certiorari. In the present matter, the Fritzes are "seeking redress for the Violation of the Fritzes' right to just compensation for the taking of private property for public use in violation of the Fifth Amendment of the United States Constitution by WASHOE COUNTY." Plaintiffs' Second Amended Complaint, ECF No. 8, at 1, ll. 17-

18. In their state-court complaint, the Fritzes alleged that Washoe County violated "the takings clause of the Fifth Amendment of the Unites States Constitution." ECF No. 10-2, ¶ 39.

As stated by the Fritzes in seeking a writ of certiorari from the United States Supreme Court: "the Fritzes raised their federal takings claim in their [state court] complaint, and pressed their federal claims in the courts below." ECF No. 10-5, at 35-36. They further noted that they raised their federal claims in the trial court, in their appeal to the Nevada Supreme Court, and when seeking reconsideration *en banc*. *Id.*, at 36. The Fritzes further argued that "[a]lthough the Nevada court did not expressly base its holding on federal law, it necessarily rejected the Fritzes' federal claims. The court's rejection of the Fritzes' federal constitutional arguments was necessary to the determination of the case . . . ." *Id.*

The Fritzes' representations to the United States Supreme Court were accurate: they asserted a Fifth Amendment takings claim in their state litigation. The state courts necessarily rejected the Fritzes' federal constitutional arguments. The Fritzes have not shown that they presented only a state law claim in their state litigation that was decided solely pursuant to state law. Rather, the record establishes that, in their state litigation, they sought relief pursuant to the Fifth Amendment takings clause. The record further establishes that the Fritzes prosecuted their state litigation to obtain relief pursuant to the Fifth Amendment takings clause. As the Fritzes represented to the Supreme Court, they pressed their federal takings claim to the Nevada Supreme Court. Conversely, the Fritzes have not directed the Court's attention to any effort on their part to reserve, in the state court litigation, their Fifth Amendment takings claim for a subsequent prosecution of that claim in federal court. Rather, as noted previously, they alleged in their state court complaint that they were seeking relief pursuant to the Fifth Amendment.

The Fifth Amendment takings issue and the Fifth Amendment takings claim litigated by the Fritzes in their state court action are, effectively, the same: whether Washoe County's involvement

in the construction of Lancer Estates and Monte Rosa, including the Lancer Estates drainage system, and including the diversion of water exceeding 10 cfs from Mt. Rose Highway, all of which discharges storm water into Whites Creek #4 upstream of the Fritzes' property, resulted in a Fifth Amendment taking of the Fritzes' property by the flooding events in 2005, 2014, and 2017. The state district court decided that issue adverse to the Fritzes on the merits and entered a judgment rejecting their claim. The Nevada Supreme Court affirmed. Accordingly, both issue and claim preclusion bar the Fritzes from re-litigating that Fifth Amendment takings claim, and that Fifth Amendment takings issue, in this action.

The Fritzes' second argument—that their Fifth Amendment takings claim in this action (and thus the takings issue) is based on different facts than their state court litigation—is also without merit. The Court recognizes that, in the present complaint, the Fritzes allege that Washoe County engaged in additional acts subsequent to the decision in their state court litigation. Specifically, they note that Washoe County has allowed additional development to occur in the Whites Creek watershed, including allowing development at Estates at Mount Rose without storm flow mitigation measures and accepting the dedication of the roads at Estates at Mount Rose. This additional conduct, they allege, will result in an increased flow of water across their property during storm events.

The defect in the Fritzes' argument is reflected in their own complaint, in which they allege that "Washoe County's own actions have resulted in a *further* taking of the Fritzes [sic] property for public use without just compensation . . . ." (ECF No. 8 ¶ 59 (emphasis added).) The state court litigation, however, established that the acts of Washoe County that were litigated in that action, which acts constitute the bulk of the Fritzes' allegations in the present complaint, did *not* result in a taking of the Fritzes' property. As previously noted by the Court, issue and claim preclusion bar the Fritzes from re-litigating that determination. As such, the Fritzes are necessarily barred from bringing a takings claim to establish that Washoe County has engaged in a further taking. Rather, to avoid

7

claim preclusion, the Fritzes must show that they have brought a Fifth Amendment takings claim against Washoe County for intermittent and temporary flooding on their property that is (1) not based on their prior Fifth Amendment takings claim or any part of that prior claim, or that could have been brought in the prior litigation, or any issue decided in reaching a final judgment on that claim, and (2) that can provide relief without conflicting with the state court's rejection of their Fifth Amendment takings claim. The Fritzes have not alleged such a claim in their present complaint.

The Court notes that its determination is not based solely on what could, perhaps, be dismissed as merely a hyperbolic argument that the Fritzes should not have included in their present complaint. Rather, the Court finds that the totality of the facts the Fritzes allege in their present complaint, the bulk of which are relevant only to their previously-litigated state court Fifth Amendment takings claim, establish that their Fifth Amendment takings claim in this case is an attempt to re-litigate the Fifth Amendment takings claim they brought in the prior state court action. The Fritzes have brought the instant complaint to establish that Washoe County's conduct, since at least 1990, resulted in a taking when the property was flooded in 2005, 2014, and 2017. The Fritzes' inclusion of the additional alleged acts of Washoe County subsequent to the prior state court decision do not convert the takings claim they previously prosecuted into a new takings claim that is distinct from, and not based on, the previously litigated takings claim. More critically, while the Fritzes point to the additional allegations as having not been previously litigated, they have not offered any argument indicating how, consistent with the state court's decision rejecting their prior Fifth Amendment takings claim, they can obtain relief pursuant to the Fifth Amendment based solely on the allegations of events occurring subsequent to the state court's decision.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant Washoe County's Motion to Dismiss (ECF No. 10) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to File Supplement (ECF No. 27) is GRANTED.

IT IS FURTHER ORDERED that the Second Amended Complaint is DISMISSED with prejudice as barred by both issue and claim preclusion pursuant to the Full Faith and Credit Act.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly and close this matter.

DATED THIS 9th day of September 2021.

                                   _____
                                   Robert C. Jones
                                   Senior United States District Judge